Good morning. How are you? I am well. How are you? Good. We have three motions for summary judgment that were granted in this case. You are? I am Trey. I'm sorry. It's my first Ninth Circuit appeal. I'm a little excited. No, I understand. I'm not. Trey Jones for the plaintiffs. I didn't see you on the brief. I am not on the brief. Well, welcome then. Good to be here. That's the only reason I was wondering. I didn't see you on the brief, but if you are brought in to argue, that's just fine. Three summary judgment motions. The defendants didn't carry their burden in any of them. The two summary judgments by Flowserve and Jergesen are essentially the same motion with the same facts. They fail under the Celotex analysis, which is the more, I guess, the lower burden for the Celotex analysis. You have to demonstrate through the normal tools of discovery that the non-moving party cannot meet their burden. What the defendants for Jergesen, the, pardon me, moving parties for Jergesen and Flowserve did was they submitted some testimony of the plaintiff. They took three or four pages from the plaintiff. They supplied an expert report that did not include any qualifications in it and submitted no other discovery device. There is no evidence, there was no evidence before the district court indicating that the parties did any discovery beyond getting an expert report and taking the plaintiff's deposition. In the Celotex case, the moving party presented evidence in the form of an interrogatory response where the moving, non-moving party was asked, do you have any witnesses? So is discovery closed in the case? Yes. Okay. And did you take any depositions? Did I take any depositions? Right. On behalf of the plaintiffs, did the plaintiffs take any depositions? There were no expert discoveries, yes. It just looks to me like there's not a lot of evidence available in the case. In fact, you supplemented your evidence with things from other cases that didn't relate to these vessels. The only eyewitness testimony describing the actual products at issue in the case was by the plaintiff. There are experts who submitted documents specific to the vessels, but none of them referenced the pumps at issue, none of them referenced the valves at issue, and the expert declarations from Admiral Horn and from McCaffrey referenced general documents describing the process for ordering gaskets and packing and other supplies. None of them were specific to these ships and none of them were specific to the case. But wasn't your obligation as the plaintiff to establish that these particular defendants, these manufacturers, were the source of the asbestos that you're relying on? At trial, that's true. At the motion for summary judgment stage, the other party, the moving party, has the burden to show that they conducted discovery. Under Nissan, Fire, and Marine, they have to show that they used the normal tools of discovery and that through those normal tools of discovery, they can establish the heavy burden, as quoting Silatex, that we cannot prove our case. They did not bring that evidence, so we don't get to whether or not I could prove it at trial. To answer your question as to whether or not I could prove it at trial, I'm not going to do that. Sotomayor, I'm looking at the district court's order. And the district court, quoting your client, Mr. Lannis admitted that the ships had been commissioned 18 years before his – before he got on board. Each ship was completely and repeatedly overhauled before he ever boarded it. And he admitted that he didn't have any more testimony. I'm not faulting him. His memory is no better than our memory. And if I had been on a ship, you know, 40, 50 years ago, I wouldn't – I wouldn't have taken note as to what was original and what wasn't original. But he just doesn't have any evidence that what – that the asbestos that he replaced was original to the ship. And therefore, we can't attribute it to the defendants. That's what the district court found. Now, it's – He does have that evidence. What evidence does he have? His evidence is the description – well, it depends on the product. Let's take the easiest one. The easiest product is the original thermal asbestos insulation in the Warren pumps. The Warren pump was supplied with original thermal insulation covered by a sheet metal covering. The witness described that insulation as original. He described it as appearing old, as form-fitted to the pump, that it had nicks and gashes that they would repair, and that they would treat it with care such that they could continue to use this form-fitted insulation. Not unlike if you've got stereo equipment and it's got a Styrofoam thing that your stereo fits perfectly in. That's what this insulation is. What is it you're relying on that is evidence that this plaintiff identified Warren as the supplier of the asbestos that affected him? Warren admitted in the declaration submitted to the district court and in depositions submitted by the plaintiffs that they supplied the pump and that it was originally supplied with thermal insulation that was asbestos-containing. That thermal insulation was under a metal sheet. The description of the pump by the plaintiff is that he worked with a pump that had thermal insulation under a metal sheet, and that he had to disturb it but try to keep it intact, just like when you take out your stereo and little pieces of the Styrofoam fall off. When he took off the insulation, little pieces of the insulation would come off, but they tried to keep it intact because it's form-fitted to the pump. And they would put it back on the pump, recover it, patch any holes or any damage they did, but use the original insulation. And he is the only eyewitness to this insulation. There's not another individual cited by him. And the district court is quoting your client, who said that the packing was pretty standard, and he couldn't verify that it was original. It could have been from somebody else. We're talking about a different product. Thermal insulation. Are we talking about Warren Pumps? I'm talking about the thermal insulation in the Warren Pumps. Okay. Well, I'm looking at the section in the district court's opinion. I'm looking at page 11 of the record, which is page 8 of 12 of the district court's opinion. So I'm looking at a section that's titled Warren Pumps. Yes, Your Honor. And there's a reference to removing insulation in that first paragraph under C. I don't believe you'll find another reference to insulation, and the district court does not conclude that the thermal insulation was not original. There is mention to packing, which is found in pumps, valves, universally. There's reference to gaskets, which are found in pumps and valves. The district court doesn't dispute it might have been original. His problem is that your client and apparently nobody else can verify that it's original. My client did, talking about the insulation. My client specifically said it was original. He said based on the appearance of the insulation, the way they handled it, and that was confirmed by the plaintiff's expert, whose deposition happened after our opposition, that he didn't have any quarrel with my client's testimony. Now, as it relates to gaskets and packing, with packing, I agree with you. When you take packing out, you can't tell what it is. It's essentially a rope that comes out as a big mess, who knows. With gaskets, the testimony of the witness is that he could tell the difference between a machine-cut gasket cut specifically for the piece of equipment, by the manufacturer of the equipment, and a man-made gasket that one of the sailors made out of a sheet of gasket materials. His testimony was that he encountered both, and specifically with the Jurgensen product, the gaskets he specifically recalls using and removing were those machine-cut gaskets. Now, we don't have to only have exposure to original parts. We can also have exposure to replacement parts provided by the manufacturer. Mr. Lannis thought or believed, testified, that based on their appearance, these were provided by the manufacturer. Did he know if they were original or later supplied by the manufacturer? He didn't, but it didn't matter. Now, at some point, he testified that he thought some were original, but we don't need that for the purposes of our appeal. Either it's original or supplied by the manufacturer. But you will find no reference in that order to the Warren Pump thermal insulation. There's no dispute that they've supplied thermal asbestos insulation with the pump originally, and the only evidence supplied by the defendant, Warren Pumps, is from Admiral Horn, who in his affidavit does not reference, and in his declaration and in his expert report, does not directly contradict Mr. Lannis' testimony. What he says is, typically, I would expect after 20 years, this insulation would be removed and replaced. Your argument is that this ought to go to the jury on the question of insulation, but you're willing to concede that with respect to packing and gaskets, you probably don't have the evidence. No. That's not my argument. My argument is, to insulation, correct. To gaskets and packing. The only way I lose the gaskets and packing portion is if the court determines that it is not going to listen to the testimony of the only eyewitness, the gentleman that actually had the gaskets in his hand, the gentleman that actually put the gaskets in the pumps and valves, the gentleman that was there when they were ordered, the gentleman that handled the gaskets before he put back in the products. If we say that gentleman cannot testify about his eyewitness experience and his training in the Navy, he worked with these products for four years, if we conclude that this gentleman's eyewitness statements are to be disregarded, then I would lose, yes. However, he is the only percipient witness in this case who has been supplied testimony from any party, and he describes the use of gaskets and packing that is consistent with that supplied by the manufacturer of the equipment, and it's consistent with the testimony of Captain Lowell, which was submitted in opposition to the motion for summary judgment. Now, Mr. Lannis said that he was ordering off of a book, is that right? Yes. Okay. And he wasn't sure whether any of that was original or was supplied by the defendants here or not? His testimony was that he believed that it was. Well, that's wonderful. I'm glad that he believes that, but what evidence does he have of that? The following. When I encountered the piece of equipment, it had a gasket that appeared to be machine cut specifically for the piece of equipment. I removed that gasket, and then I went to my first class, my superior. My first class superior keeps books for each piece of equipment I repaired. That book was published by the manufacturer. He referred to them as manufacturer's books. Mr. Lannis saw the first class, then ordered the specific part from the manufacturer's book. Then the product came back to Mr. Lannis to install in the piece of equipment, be it the pumper valve, and it was the same as the product he took out. It fit perfectly. He specifically refers to the Warren book, but it's not entirely clear that the other gaskets were manufacturer's gaskets. They could be aftermarket gaskets. They could be machined and ordered, but they don't need to have been produced by the manufacturer of the pump, do they? If you're asking me, is it possible that they were supplied by someone else other than manufacturer, the answer is yes. That's not the testimony of the only eyewitness, and that would be an issue for the jury. But he makes a specific reference to the Warren book. And the Jergesen book. There's a discussion of a specific gauge glass, the Jergesen gauge glass, and he has testimony specific to the use of that gauge glass, and he talks about the manufacturer's book in reference to that. So we have two issues. One is the issue of original equipment. As far as original equipment goes, Warren pump thermal insulation, that's the only thing we're going on. As far as replacement gaskets and packing, that is all three defendants, moving parties, Warren pumps, Jergesen, and FlowServe. And there is the only evidence as to the thermal insulation from Warren is from the person that worked with it who believed it to be original. And there was no objection sustained that it was an improper lay opinion or anything like that. And it is a proper lay opinion. He's the person that worked with it for four years. He saw the condition of it. He was around other insulation. He knew the difference between old insulation and new insulation. Okay. Thank you. Thank you. Good morning. Rebecca Leffler on behalf of Defendant Anna Pelley's Jergesen Gauge and FlowServe US. I'm planning to take 10 minutes of the time, and my colleague from Warren Pumps will take the second 10 minutes. So this case involves only replacement gaskets and packing. It's not really an issue as to whether original parts remained on the ship at this time. The ships were commissioned in the 1940s, so for 20 years, some supplier had been supplying replacement gaskets and packing to be put on the ships. So for FlowServe, your client produces only gaskets and packing? Is that right? Not insulation? I believe that's correct. And there's no allegation that FlowServe provided anything that was originally on the ship. Is that correct? FlowServe provides replacement parts? No. FlowServe is the name of the defendant, but Edward Valve was the name of the product. So we're talking about... Okay. So were the Edward Valves... Is it a possibility that Edward Valves were original to the ship? Well, the valves themselves were. But the valves involved gaskets that would get replaced on a regular basis. Okay. So let's see. So essentially we're talking about the bare metal doctrine, the O'Neill case from the California Supreme Court. A manufacturer can't be held liable for another company's asbestos-containing parts. So a plaintiff has the burden under O'Neill to make the connection between a particular supplier and that plaintiff's exposure to asbestos. So here there just is no evidence of which company supplied the gaskets or packing that Mr. Lannis may have been exposed to. Mr. Lannis himself was the only product identification witness offered. He testified that he couldn't identify the manufacturer of any replacement parts that he worked on or near on the ships that he worked on. The deposition in this case was very long. It ran 500 plus pages. Plaintiff's counsel had plenty of opportunity to question the witness. So there was no discovery that hadn't been done yet. Discovery was very thorough here. And Mr. Lannis testified that when he needed replacement parts, he got them from a petty officer in the supply department. So Mr. Lannis himself didn't have a direct connection with any of the companies. He didn't get these gaskets out of a box that was stamped with the manufacturer name or something like that. He asked someone else for the part. He argues that because the gaskets were cleanly made and they fit properly, they must have come from the original manufacturer. But that's just an assumption. It's just speculation. We all know that there are plenty of generic aftermarket products that fit perfectly. You go to the auto shop to get your car serviced and you can get the genuine part or the one that costs half as much and they both work just the same. So that's just an assumption that's not based on any evidence. And it's not enough to shift the burden back or to present a genuine issue for trial. The plaintiffs submitted... There were parts books that were marked with the manufacturer's name. Right. But just because the manufacturer identifies a part number doesn't mean that the manufacturer made the part that needs to fit into the gauge glass or the valve at issue. It's just not a connection. Just to say this particular part number 20 years down the line is going to fit this valve doesn't mean that the manufacturer of the gasket itself was the original manufacturer. There's no connection there. Is there any evidence in the record that manufacturers would provide books with these specs on them and the parts were manufactured by somebody else? I don't believe that that specifically is in the record but that's plaintiff's burden to make that connection. Defendants did... Maybe it's enough. If he says, look, there's evidence that it was ordered out of a book that had the manufacturer's name on it why isn't the inference that that's a catalog with the manufacturer's products? And if you think it's not then maybe your side has to bring in evidence saying, no, no, the book would only provide specs and you could order it from an aftermarket. Right. Well, defendants did provide that evidence. We provided the expert opinion of Thomas McCaffrey and he established that neither Edward Valve nor Jurgensen was an approved supplier to the Navy of replacement parts. He has spent a decade looking over qualified product lists and approved suppliers for thermal insulation, gaskets, and packing. Neither Edward Valve nor Jurgensen Gauge were ever approved suppliers for the Navy. So that does establish that these defendants weren't making the replacement parts that were being put on the ships. And of course, this information is all public record. Plaintiffs had access to it if they wanted to look at it but instead they submitted the declaration of Captain Lowell who only opined that Mr. Lannis worked with these replacement parts. He never actually made any connection between any particular manufacturer and the replacement parts that Mr. Lannis worked with. Okay. Unless the Court has further questions? Okay, we'll hear from the Co-Counsel. Thank you. Good morning, Your Honors. May it please the Court, Gonzalo Martinez for Eppley, Warren Pumps. Your Honors, the District Court was correct that there is no material fact dispute here and this Court should affirm the summary judgment in favor of Warren Pumps. Now very briefly on the issue of burden shifting, Warren shifted the burden under Celotex because it provided evidence that supported its motion and even had it not presented evidence, it could have done so with argument alone under Celotex and also under Nissan. In addition, Warren submitted the factually devoid discovery responses of the plaintiffs in this case and Celotex held that that was enough to shift the burden. Now... Provided what? I'm sorry? What is it that they provided? Factually devoid discovery responses which indicated that Mr. Lannis was their only product ID witness and the responses didn't include very much by way of facts, essentially, to support their contention that Warren Pumps... Well, they had evidence that the replacement gaskets were ordered out of a book that had Warren Pumps on the label. Well, Your Honor, what the evidence showed is actually that Mr. Lannis speculated that those books came from Warren. There is no evidence in the record that those books actually came from Warren. He assumed that they came from Warren. In the opening brief, the appellant stated that Mr. Lannis went and ordered the parts himself, but when you look at the testimony, what he did is he went to his first-class officer. That first-class officer would pull out a manufacturer book. Mr. Lannis assumed that it came from Warren, but there's actually no evidence that those books, in fact, came from Warren. Further, Mr. Lannis didn't order any parts himself from Warren. And just stepping back... I thought he said if you had to get parts, you went to the first class and he got the Warren book out. Yes, but, Your Honor, as the district court noted, Mr. Lannis never testified that it actually said Warren on the book. He presumed that it said Warren. And for that reason, he was assuming that his first-class officer was ordering from a Warren book. But we would submit to you that there's no actual evidence of that beyond Mr. Lannis' unreasonable speculations on this record. But even stepping back, Your Honor, even if it were true, even if he were to accept that these books came from Warren, appellant just admitted that there are other sources for parts. So the fact that a part was ordered from a Warren book does not establish that it necessarily came from Warren. That's pretty good proof. Well, it's not enough, Your Honor. Under O'Neill, O'Neill requires a plaintiff to establish exposure to the particular defendant's asbestos product. The fact that a part was ordered for... and that it presumably... that it assumedly came from Warren does not establish that it came to the ship, that it came to the ship during the relevant time period, or even that it made it into the fire room where Mr. Lannis worked. Mr. Lannis only worked in one of the fire rooms, not two of them. So there's a number of inferential leaps that would have to be made. Now, even if... So, in other words, there is nothing before the court other than Mr. Lannis' speculations. And the plaintiffs are inviting you to speculate and we would submit to you that if you look at the evidence closely, you see that there's a number of breaks in that causal chain. Now, if I can address the issue of... Counsel, opposing counsel just told us a little while ago that he thought that the plaintiff said that the insulation was original to Warren. Did I understand that correctly? Yes, Judge O'Scanlan, that is what they contend. All right. What's your response to that? Well, what we would say is that you have to look at that testimony and its context. Now, the undisputed context here is that these are 20-year-old ships. The pumps may have shipped with asbestos-containing original insulation. That was 20 years before Mr. Lannis even stepped on board. Now, Admiral Horne submitted a declaration and an ex report going through all of the overhauls that the ship had undergone over the course of 20 years. It had been overhauled two to three times and it wasn't just as declarative declaration. There were Navy records indicating that the ship had been overhauled and Mr. Horne also testified that during those overhauls it is likely that any original parts would have come off because the purpose of an overhaul is essentially to scrub the ship to make it as new again. So when you look at that testimony in its context, there just isn't very much there. Additionally, plaintiff's own expert agreed that all the original parts would have been gone The only thing he had to say as to original insulation was whatever Mr. Linus said. Now if we take a look at Mr. Linus' testimony I'll submit to you that a Navy pump is not a car stereo. The fact that a Navy pump is not a car stereo which was the example the appellant was trying to use is that because when you took the casing off of the pump there was insulation that was molded and somehow fit perfectly that because of that it was somehow original. The thing is even if it looked old old does not distinguish between 20 years old 10 years old 4 years old there is just no basis to infer that because it looked old it was therefore original. And again in the context of these lengthy overhauls we would just submit to you that it's inadmissible it's speculative but even if you were to consider that evidence it's just not enough to get past the summary judgment their summary judgment it's a burden it's an unreasonable inference. Okay, thank you. Thank you. Thanks. We have a bit of time left for rebuttal if you want to take it. Addressing the points of Warren Pumps first Council correctly stated that the expert opined that it was likely that the insulation on the pump was replaced. That testimony is not based on the eyewitness description of the insulation it's condition and it's care while Mr. Lantis was on the ship. Second the records that they reviewed did not include records related to the overhaul of the pumps at issue. There is not a record that has been put before this court that says we've overhauled this pump eight times and replaced the insulation six times that's not before this court. All we have is the description of a paid expert who says I think over twenty years that insulation would probably be gone. As to the evidence of whether or not Warren supplied books they didn't dispute that they did. Our client says that they ordered materials from a manufacturer's book and the evidence before the court  Warren supplied spare parts for the equipment they supply. That's in the testimony of Roland Doctor. In fact the declaration of Roland Doctor supplied in support of their motion for summary judgment admits that the pump is originally shipped with spare parts. Many spare parts. So it's disingenuous to suggest that they sell this pump and have no further dealing with it. There's actually a document in the record that discusses the amount of business Warren pumps in the 1950s did in the sale of replacement parts for its pumps. Which makes sense. That is a source of profit for them. So they sell those things and they confirm that in the deposition testimony. As it relates to the declaration or expert report of Tom McCaffrey for the company. In the record the FlowServe for Edward Valves sold  asbestos gaskets and packing. That's consistent with Mr. Lannis' testimony that those products were ordered from manufacturer books. We also have evidence from Mr. Warren. That is consistent with the description of Mr. Lannis. It's important to note that the only thing we know about Mr. McCaffrey is that he apparently looked at a bunch of stuff that has to do with the Navy. There are no qualifications for anything within that expert report. It cannot be relied  under Daubert and it should have been excluded. In the district court's opinion it is relied on heavily. It should have been thrown out altogether because of timely objections and the complete lack of qualifications. Thank you. Thank you.
judges: Kozinski, O'scannlain, Bybee